1

2

3

4

5                UNITED STATES DISTRICT COURT

6             EASTERN DISTRICT OF WASHINGTON

7    C.S.,

8                     Plaintiff,

9       v.

10  THE CORPORATION OF THE
      CATHOLIC BISHOP OF YAKIMA,
11  et al.,

12                Defendants.

NO:  13-CV-3051-TOR

ORDER ON DEFENDANTS' MOTIONS TO DISMISS

13

14       BEFORE THE COURT are the following motions: (1) Defendant

15  Corporation of the Catholic Bishop of Yakima's Motion to Dismiss for Failure to

16  State a Claim (ECF No. 2); (2) Defendant Diocese of Beaumont's Motion to

17  Dismiss for Failure to State a Claim (ECF No. 6); (3) Defendant Diocese of

18  Beaumont's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 7); and

19  (4) Defendant Diocese of Beaumont's Motion to Strike the Affidavit of Thomas P.

20  Doyle (ECF No. 19).  These matters were heard with oral argument on September

ORDER GRANTING MOTIONS TO DISMISS ~ 1

24, 2013, in Yakima, Washington.  Vito de la Cruz and Bryan G. Smith appeared on behalf of the Plaintiff.  Theron A. Buck and Thomas D. Frey appeared on behalf of Defendant Corporation of the Catholic Bishop of Yakima.  Gregory J. Arpin and Randal G. Cashiola (telephonically) appeared on behalf of Defendant Diocese of Beaumont.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

BACKGROUND

Plaintiff has sued the Corporation of the Catholic Bishop of Yakima ("Yakima Diocese") and the Diocese of Beaumont ("Beaumont Diocese") for negligently failing to prevent him from being sexually abused as a minor by a priest named Father Ernest Dale Calhoun ("Father Calhoun").  Both Defendants have moved to dismiss the complaint for, *inter alia*, failure to plead sufficient facts to support an inference that the statute of limitations on Plaintiff's claims has been tolled under RCW 4.16.340.  The Beaumont Diocese also seeks dismissal of Plaintiff's claims for lack of personal jurisdiction.

FACTS

The following facts are drawn from Plaintiff's complaint and are accepted as true for purposes of the instant motion only.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Plaintiff was sexually abused by Father Calhoun on multiple occasions from approximately 1977 to 1982.  Pl.'s Compl., ECF No. 1, at ¶ 3.2.

1   The abuse began when Plaintiff was approximately 12 years old and continued

2   until Plaintiff reached the age of 17.  Pl.'s Compl., ECF No. 1, at ¶ 3.3.  On at least

3   one occasion, a church leader named Monsignor Ecker witnessed Father Calhoun

4   "escorting" Plaintiff to the church rectory immediately prior to an instance of

5   abuse.  Pl.'s Compl., ECF No. 1, at ¶ 3.5.

6        Prior to joining the Yakima Diocese, Father Calhoun was affiliated with the

7   Beaumont Diocese in Beaumont Texas.  Pl.'s Compl., ECF No. 1, at ¶ 3.11.

8   During his time in Beaumont, Father Calhoun was accused of engaging in

9   "inappropriate sexual conduct with seminarians."  Pl.'s Compl., ECF No. 1, at ¶

10  3.7.  As a result of these accusations, Father Calhoun was ordered to undergo a

11  psychological evaluation.  Pl.'s Compl., ECF No. 1, at ¶ 3.8.  The psychologist

12  who performed the evaluation concluded that Father Calhoun posed a risk of

13  engaging in inappropriate sexual conduct and recommended that he not be

14  ordained as a priest.  Pl.'s Compl., ECF No. 1, at ¶ 3.10.  Despite this

15  recommendation, the Beaumont Diocese ordained Father Calhoun as a priest in

16  1968.  Pl.'s Compl., ECF No. 1, at ¶ 3.10.

17       After a brief period of service as a chaplain in the United States Navy (1974-

18  1976), Father Calhoun sought employment with the Yakima Diocese.  Pl.'s

19  Compl., ECF No. 1, at ¶ 3.14.  Upon receiving his application, the Yakima Diocese

20  requested an evaluation of Father Calhoun's fitness to serve as a priest from the

ORDER GRANTING MOTIONS TO DISMISS ~ 3

1    Beaumont Diocese.  Pl.'s Compl., ECF No. 1, at ¶ 3.16.  The Beaumont Diocese

2    responded that while Father Calhoun had "experienced problems" during his

3    tenure there, he would likely be successful in the Yakima Diocese.  Pl.'s Compl.,

4    ECF No. 1, at ¶ 3.17.  The Beaumont Diocese did not, however, "disclose in

5    writing . . . that Father Calhoun had been accused of inappropriate sexual conduct

6    with minors in seminary and/or while employed by the Diocese of Beaumont, and

7    that a psychological evaluation had concluded that Father Calhoun posed a risk of

8    engaging in inappropriate sexual conduct."  Pl.'s Compl., ECF No. 1, at ¶ 3.18.

9    The Yakima Diocese "incardinated" Father Calhoun and maintained authority,

10   control and supervision over him.  Pl.'s Compl., ECF No. 1, at ¶¶ 3.19 and 3.23.

11                                        DISCUSSION

12   **A. Personal Jurisdiction Over the Beaumont Diocese**

13          A motion to dismiss for lack of personal jurisdiction is governed by Federal

14   Rule of Civil Procedure 12(b)(2).  In opposing such a motion, the plaintiff bears

15   the burden of establishing that jurisdiction is proper.  *Mavrix Photo, Inc. v. Brand*

16   *Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2008).  When the motion is "based on

17   written materials rather than an evidentiary hearing, the plaintiff need only make a

18   prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Id.*

19   (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th

20   Cir. 2010)).  To satisfy this standard, a plaintiff "need only demonstrate facts

ORDER GRANTING MOTIONS TO DISMISS ~ 4

that[,] if true[,] would support jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (quotation and citation omitted).  In determining whether a plaintiff has made the requisite showing, a court must accept all uncontroverted allegations in the complaint as true and resolve any factual disputes in the Plaintiff's favor.  *Id.*

The term personal jurisdiction refers to a court's power to render a valid and enforceable judgment against a particular defendant.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  The exercise of this power is limited by the Due Process Clause of the Fourteenth Amendment.  In general, due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state such that requiring the defendant to defend in that forum would comport with traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction over a non-resident defendant may take one of two forms: general jurisdiction or specific jurisdiction.  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 233 F.3d 1082, 1086 (9th Cir. 2000).  General jurisdiction may be exercised over a defendant who has established "substantial" or "continuous and systematic" contacts with the forum, regardless of whether the cause of action arose from those contacts.  *Id.*  Specific jurisdiction, by contrast, may only be exercised when the plaintiff's cause of action arises from the defendant's specific

contacts with the forum.  *Id.*  In either case, the critical inquiry is whether the defendant's contacts with the forum are sufficiently extensive to warrant the exercise of personal jurisdiction.  *Id.*

Plaintiff concedes that he is unable to establish general jurisdiction over the Beaumont Diocese.  ECF No. 11 at 7.  Thus, the Court will proceed directly to the specific jurisdiction analysis.  The following three-part test controls:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Mavrix Photo*, 647 F.3d at 1228-29 (9th Cir. 2011) (emphasis in original) (quotation and citations omitted).  The plaintiff bears the burden of establishing that the first two prongs have been satisfied.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If the plaintiff is successful, the burden shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

For the reasons discussed below, the Court concludes that (1) Plaintiff has failed to demonstrate that the Beaumont Diocese "purposefully directed" its activities toward the State of Washington; and (2) in the alternative, the Beaumont

ORDER GRANTING MOTIONS TO DISMISS ~ 6

Diocese has made a "compelling case" that the exercise of specific jurisdiction would be unreasonable on the facts of this case.

      1.  <u>Purposeful Direction (*Calder* Effects Test)</u>

      The first prong of the specific jurisdiction test may be satisfied by either "purposeful direction" of the defendant's activities toward the forum state or "purposeful availment" of the forum state's laws. *Yahoo! Inc. v. La Ligue Contre La Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). These are "two distinct concepts," and courts applying them must be careful to apply the correct test based upon the type of claim(s) being asserted. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 743 (9th Cir. 2013). "In tort cases, [courts in the Ninth Circuit] typically inquire whether a defendant 'purposefully directs his activities' at the forum state[.] *Yahoo! Inc.*, 433 F.3d at 1206. In deciding whether purposeful direction occurred, courts apply an "effects test" that "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* This test, which is derived from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), "requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo*, 647 F.3d at 1228 (quotation and citation omitted).

i.   Intentional Act

The term "intentional act" has a "specialized meaning in the context of the *Calder* effects test." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012) (quotation and citation omitted).  For purposes of this test, "an intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Id.*

The Beaumont Diocese engaged in an intentional act when it sent a letter of recommendation to the Yakima Diocese on Father Calhoun's behalf.  This was an "actual, physical act in the real world." *Id.*  The fact that the Beaumont Diocese may not have intended the alleged results of that act is irrelevant.  *Id.*  This prong of the *Calder* effects test is satisfied.

ii.   Express Aiming

The "express aiming" prong is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Wash. Shoe*, 704 F.3d at 675 (quotation and citation omitted); *see also Bancroft & Masters*, 223 F.3d at 1087 ("'[E]xpress aiming' encompasses wrongful conduct individually targeting a known forum resident.").  The nature of the express aiming analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."

*Schwarzenegger v. Fred Martin Motor Co.*, 347 F.3d 797, 807 (9th Cir. 2004).

When the alleged conduct involves an *intentional* tort, for example, the analysis is

relatively straightforward.  In these cases, the defendant's actions "[were]

performed for the very purpose of having their consequences felt in the forum

state." *Id.*  Because such conduct implicates the forum state's "special interest in

exercising jurisdiction over those who commit intentional torts" against its

residents, the exercise of personal jurisdiction is usually supported.  *Id.* at 675-76

(citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008)).

     In cases of alleged *negligence*, by contrast, the express aiming requirement

is more difficult to satisfy.  *See Calder*, 465 U.S. at 789 (distinguishing "untargeted

negligence" from "express aiming"); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

1112 (same).[1]  The dispositive question in such cases is whether the defendant

---

[1] Indeed, there is reason to question whether negligence claims are properly

analyzed under *Calder* in the first instance.  *See Holland Am. Line Inc. v. Wartsila

N. Am., Inc.*, 485 F.3d 450, 454, 460 (9th Cir. 2007) (declining to apply *Calder*

effects test to claims for negligent design and negligent manufacture of an

allegedly defective engine part).  Given that Plaintiff's theory of personal

jurisdiction over the Beaumont Diocese clearly involves "express aiming" of

negligent acts toward the State of Washington, however, the Court will proceed

with the *Calder* analysis.  *See* ECF No. 11 at 9 ("The Diocese of Beaumont

"individually targeted" a resident of the forum state or whether it was "merely

foreseeable that there [would] be an impact on individuals in the forum." *Fiore v.*

*Walden*, 688 F.3d 558, 581 (9th Cir. 2012).  Mere foreseeability of injury in the

forum state is insufficient to satisfy the express aiming requirement; the plaintiff

must demonstrate that the defendant made a conscious and deliberate effort to

engage a resident of the forum.  *See id.* at 577; *Wash. Shoe*, 704 F.3d at 677

("[W]here a defendant *knows*—as opposed to being able to foresee—that an

intentional act will impact another state, the 'expressly aimed' requirement is

satisfied.") (emphasis in original).

Plaintiff has failed to satisfy the express aiming requirement.  First, Plaintiff

cannot demonstrate that he was "individually targeted" by the Beaumont Diocese's

letter of recommendation.  To whatever extent the Beaumont Diocese "knew or

should have known" that its alleged misrepresentations about Father Calhoun

would harm Washington residents, *see* ECF No. 11 at 9-13, there is no indication

(or even an allegation) that *Plaintiff* was specifically targeted.  At best, Plaintiff has

established that the Beaumont Diocese should have anticipated that persons in his

position might have been harmed.  Such mere foreseeability of generalized harm,

purposefully directed acts aimed at Washington State causing harm that it knew or

should have known was likely to be suffered.").

ORDER GRANTING MOTIONS TO DISMISS ~ 10

1    however, is insufficient to satisfy the express aiming requirement.  *Fiore*, 688 F.3d

2    at 581.  Because the Beaumont Diocese did not "individually target[] a known

3    forum resident," Plaintiff cannot satisfy the express aiming prong of the Calder

4    effects test.  *Bancroft & Masters*, 223 F.3d at 1087.  This absence of express

5    aiming is fatal to Plaintiff's ability to establish personal jurisdiction over the

6    Beaumont Diocese.  In the interest of developing a complete record, however, the

7    Court will proceed with the remainder of the personal jurisdiction analysis.

8                          iii.    Foreseeability of Harm

9            The third prong of the *Calder* effects test "asks whether the intentional acts

10   caused harm that the defendant knows is likely to be suffered in the forum state."

11   *In re W. States*, 715 F.3d at 744.  The relevant inquiry is whether "the defendant's

12   intentional act ha[d] 'foreseeable effects' in the forum."  *Fiore*, 688 F.3d at 581.

13          Plaintiff has satisfied the foreseeability prong.  Although a close question,

14   the Beaumont Diocese could arguably have foreseen that failing to disclose Father

15   Calhoun's alleged propensity for "inappropriate sexual conduct" would result in

16   harm to Washington residents.  For purposes of this prong, it matters not whether

17   the Beaumont Diocese could have foreseen harm to Plaintiff personally.

18                   2.   Claims Arising From Forum-Specific Contacts

19          The second prong of the specific jurisdiction analysis focuses on whether the

20   plaintiff's claims arise out of the defendant's forum-related activities.  Courts in

ORDER GRANTING MOTIONS TO DISMISS ~ 11

the Ninth Circuit apply a "but for" test to determine whether this requirement has been satisfied. *In re W. States*, 715 F.3d at 742. "Under the 'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Id.* (quotation omitted).

The Court finds that the "but for" test has been satisfied. Contrary to the Beaumont Diocese's assertions, Plaintiff need not establish that he would not have been *injured* "but for" its alleged negligence. *See* ECF No. 7 at 14. Instead, Plaintiff must merely demonstrate that his claims—irrespective of their underlying merit—would not have arisen but for the Beaumont Diocese's contacts with Washington. *In re W. States*, 715 F.3d at 742. That requirement is easily satisfied here, as Plaintiff's causes of action all arise from the Beaumont Diocese's communications with the Yakima Diocese about Father Calhoun.

        3. <u>Reasonableness Considerations</u>

As noted above, because Plaintiff has failed to demonstrate purposeful direction of the Beaumont Diocese's activities toward Washington, personal jurisdiction is lacking. Nevertheless, assuming for the sake of argument that Plaintiff could establish purposeful direction, the Court concludes that the exercise of personal jurisdiction over this Defendant would offend traditional notions of fair play and substantial justice.

Once a plaintiff satisfies the first two prongs of the specific jurisdiction analysis, the burden shifts to the defendant to make a "compelling case" that the exercise of personal jurisdiction would be unreasonable—*i.e.*, that requiring the defendant to litigate in the forum would offend traditional notions of fair play and substantial justice. *In re W. States*, 715 F.3d at 745 (citing *Burger King*, 471 U.S. at 476-77). There are seven factors relevant to a court's reasonableness inquiry:

> (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 at 1114. The Court will address each of these factors in turn.

### i.    Extent of Purposeful Injection

The extent of the Beaumont Diocese's purposeful injection into the State of Washington's affairs was *de minimis*. The Beaumont Diocese's *only* alleged contact with Washington was a letter mailed to the Yakima Diocese addressing Father Calhoun's fitness to serve as a priest. Notably, this letter was sent in response to a formal request for information *by the Yakima Diocese*; the Beaumont Diocese did not initiate the contact. Doyle Aff., ECF No. 12, at ¶ 25. Moreover, according to Plaintiff, the Beaumont Diocese was "*required* by Church law and practice" to respond to the Yakima Diocese's inquiry. ECF No. 11 at 4 (emphasis

added).  A single obligatory letter of recommendation simply cannot support a

finding of "purposeful injection" into the State of Washington's affairs.

Further, it bears noting that the Beaumont Diocese's endorsement of Father

Calhoun was far from glowing.  *See* Doyle Decl., ECF No. 12, at ¶¶ 26-27.

Plaintiff himself describes the letter as a "qualified and suspicious reference," *see*

ECF No. 11 at 11, and this description appears to be supported by the excerpts of

the letter in Mr. Doyle's affidavit.  Thus, even assuming that the Beaumont

Diocese omitted important facts about Father Calhoun's fitness to serve as a priest,

the information which it *did* convey effectively put the Yakima Diocese "on

notice" that Father Calhoun was not an ideal candidate.  This circumstance also

cuts against a finding that the Beaumont Diocese purposefully injected itself into

Washington's affairs.

Plaintiff suggests that the purposeful injection factor should weigh in his

favor because "the Beaumont Diocese retained personal authority and jurisdiction

over Calhoun" during his first two years of probationary employment with the

Yakima Diocese.  ECF No. 11 at 14.  There is no dispute that Father Calhoun

remained "incardinated" with the Beaumont Diocese during his two-year term of

"*ad experimentum*" employment with the Yakima Diocese, and that, as a result,

Father Calhoun remained under the official authority of the Bishop of the

Beaumont Diocese during that time.  Jamail Decl., ECF No. 8, at ¶ 7; Doyle Decl.,

ECF No. 12, at ¶ 36.  Nevertheless, the record reveals that the Bishop of the

Beaumont Diocese exercised no *actual* authority over Father Calhoun's actions

once he accepted employment with the Yakima Diocese.  Indeed, Plaintiff's own

expert states that the Bishop of the Beaumont Diocese "did not have the right to

directly control Calhoun's ministerial activities in Yakima because these activities

involved serving the people of the Diocese of Yakima and not the Diocese of

Beaumont."  Doyle Aff., ECF No. 12, at ¶ 36.

This explanation is corroborated by Monsignor Jamail of the Beaumont

Diocese, who states as follows:

- Priests may leave the Diocese of Beaumont from time to time, and for various personal reasons, but in doing so, they are under the control and supervision of the Bishop of the Diocese where they serve;

- Once the Bishop [of a "receiving diocese"] accepts a priest *ad experimentum*, that Bishop assumes responsibility over the priest, including all compensation of the priest, in relation to the pastoral care of the Catholic population in the receiving Diocese.  The Bishop of the receiving Diocese determines in his sole discretion whether and when to accept the priest into the Diocese permanently, and so determines in his sole discretion the duration of the *ad experimentum* [period];

- During the incardination process, including the period of *ad experimentum*, the Bishop of the sending Diocese has no right of direct control over the activities of the priest.  During the *ad experimentum* period, the priest remains attached to the sending Diocese, but is exclusively serving the Bishop of the receiving Diocese.

ORDER GRANTING MOTIONS TO DISMISS ~ 15

1  Jamail Decl., ECF No. 8, at ¶¶ 12, 22.  In sum, it is undisputed that, for all practical

2  purposes, Father Calhoun was under the exclusive authority and control of the

3  Yakima Diocese from the moment he arrived in 1976.  The fact that the Bishop of

4  the Beaumont Diocese retained nominal or token authority over Father Calhoun

5  during his two years of *ad experimentum* employment does not warrant a finding

6  of purposeful injection into Washington's affairs.

                       ii.    Burden on Defendant

8        The burden on the Beaumont Diocese of defending in Washington is high.

9  The Beaumont Diocese is a non-profit association which operates exclusively in

10  nine counties in the State of Texas.  Jamail Decl., ECF No. 8 at ¶ 4, 7.  It has never

11  done business in Washington, and it has never offered its services to Washington

12  residents.  Jamail Decl., ECF No. 8 at ¶ 11.  In short, the Beaumont Diocese has

13  virtually no connections to the State of Washington.  Requiring it to defend here

14  would pose a significant burden financial burden.  This factor also weighs strongly

15  in the Beaumont Diocese's favor.

                       iii.    Conflicts in Sovereignty

17        This factor is neutral.  Neither party has identified a potential conflict in

18  sovereignty between Washington and Texas.

                       iv.    Forum State's Interest

20        Washington has a significant interest in adjudicating cases involving sexual

ORDER GRANTING MOTIONS TO DISMISS ~ 16

abuse of Washington children.  *See C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wash.2d 699, 712 (1999) (noting that the Washington Legislature enacted RCW 4.16.340 "to provide a broad avenue of redress for victims of childhood sexual abuse").  This factor weighs generally in Plaintiff's favor, despite the fact that Plaintiff no longer resides in Washington.  *See* Pl.'s Compl., ECF No. 1, at ¶ 1.1 (Plaintiff is a resident of Washington County, Oregon).

v.    Efficient Resolution of Controversy

Litigating in a single forum, as opposed to two different forums, would provide the most efficient judicial resolution of this controversy.  This factor weighs in Plaintiff's favor.

vi.    Convenient & Effective Relief

Plaintiff clearly has an interest in obtaining convenient and effective relief in the Eastern District of Washington.  However, this interest is diminished to some degree by the fact that he currently resides near Portland, Oregon.  The Court takes judicial notice that the distance between Portland and Yakima is approximately 180 miles.  While this distance does not render the Eastern District of Washington a particularly *inconvenient* forum, the fact that Plaintiff has sought relief outside his "home" forum renders this factor less significant.  It also bears noting that this factor is typically afforded less weight in the first instance by courts in the Ninth Circuit.  *See Dole Food*, 303 F.3d at 1116 ("[I]n this circuit, the plaintiff's

convenience is not of paramount importance.").  This factor weighs slightly in

Plaintiff's favor.

vii.    Existence of an Alternative Forum

This factor weighs strongly in the Beaumont Diocese's favor, as the Eastern

District of Texas remains available to Plaintiff as an alternative forum.

On balance, the above factors weigh squarely in the Beaumont Diocese's

favor.  The fact the Beaumont Diocese's only contact with Washington was a

single letter of recommendation submitted in response to a formal request for

information by the Yakima Diocese is a particularly compelling circumstance.

Even if Plaintiff could establish that this letter was "purposefully directed" to

Washington, the Court concludes that requiring the Beaumont Diocese to defend in

Washington based upon this *de minimis* contact would offend traditional notions of

fair play and substantial justice.  Plaintiff's claims against the Beaumont Diocese

are dismissed for lack of personal jurisdiction on this alternative basis as well.

4.  Request for Jurisdictional Discovery

At oral argument, Plaintiff moved for leave to take limited jurisdictional

discovery on the issue of whether the Beaumont Diocese purposefully directed its

activities toward Washington.  Leave to take jurisdictional discovery should be

permitted when "pertinent facts bearing on the question of jurisdiction are in

dispute."  *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir.

1989) (citing *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430-31 n.

24 (9th Cir. 1977)).   When a court finds that discovery "would not demonstrate

facts sufficient to constitute a basis for jurisdiction," however, leave to take

jurisdictional discovery is properly denied.  *Wells Fargo*, 556 F.2d at 430 n. 24;

*see also St. Clair v. City of Chico*, 880 F.2d 199, 202 (9th Cir. 1989) ("Where, as

here, the extra-pleading material demonstrates that the controlling questions of fact

are undisputed, additional discovery would be useless.").

As noted above, it is undisputed that the Bishop of the Beaumont Diocese

exercised no actual authority or control over Father Calhoun during his period of

*ad experimentum* employment with the Yakima Diocese.  According to Plaintiff's

own expert, the Bishop of the Beaumont Diocese "did not have the right to directly

control Calhoun's ministerial activities in Yakima because these activities involved

serving the people of the Diocese of Yakima and not the Diocese of Beaumont."

Doyle Aff., ECF No. 12, at ¶ 36.  Thus, contrary to Plaintiff's assertions, the

controlling issue of fact for purposes of the purposeful direction analysis is

undisputed: although the Beaumont Diocese may have retained *symbolic* authority

over Father Calhoun, it retained no *actual* authority over his actions during his

period of probationary employment.  As a matter of undisputed fact, the Beaumont

Diocese did not engage in purposeful direction of its activities toward Washington

1    by allowing Father Calhoun to transfer to the Yakima Diocese.  No additional

2    discovery on this issue is warranted.

3    **B. Motion to Strike**

4            The Beaumont Diocese has moved to strike the affidavit of Thomas P. Doyle

5    (ECF No. 12) on the grounds that Mr. Doyle's statements are speculative and not

6    supported by personal knowledge.  ECF No. 19.  Having reviewed the affidavit,

7    the Court finds the statements therein admissible for the limited purpose for which

8    they were submitted—to respond to the Beaumont Diocese's assertions regarding

9    the absence of personal jurisdiction.  Accordingly, the motion is denied.  The Court

10   has fully considered this evidence in reaching the ruling above.

11   **C. Failure to State a Claim**

12           A motion to dismiss for failure to state a claim "tests the legal sufficiency"

13   of the plaintiff's claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To

14   withstand dismissal, a complaint must contain "enough facts to state a claim to

15   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

16   (2007).  "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s]

17   of the elements of a cause of action will not do."  *Id.* at 555, 557.  "A claim has

18   facial plausibility when the plaintiff pleads factual content that allows the court to

19   draw the reasonable inference that the defendant is liable for the misconduct

20   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a plaintiff need not

establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint must also contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled. The court should generally draw all reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it need not accept "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

In ruling upon a motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the party opposing the motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. *Id.* The court may also disregard conclusory allegations and arguments which are not supported by reasonable deductions and inferences. *Id.*

ORDER GRANTING MOTIONS TO DISMISS ~ 21

The Ninth Circuit has repeatedly instructed district courts to "grant leave to amend even if no request to amend the pleading was made, unless . . . the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The standard for granting leave to amend is generous—the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether leave to amend is appropriate, a court must consider the following five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

The Yakima Diocese has moved to dismiss the Complaint for failure to plead sufficient facts to support Plaintiff's invocation of Washington's "savings statute," RCW 4.16.340, for claims involving allegations of childhood sexual abuse. Specifically, the Yakima Diocese contends that Plaintiff "fails to assert any facts that would establish a feasible claim that he has only recently discovered the nature of his damages; instead he simply quotes the savings language from the statute." ECF No. 2 at 2. Given that the Complaint "merely parrots the statutory language and adds <u>no actual facts</u> demonstrating recent discovery of harm," the Yakima Diocese argues, Plaintiff's negligence claims must be dismissed. ECF No. 15 at 4 (emphasis in original).

ORDER GRANTING MOTIONS TO DISMISS ~ 22

In Washington, negligence claims are subject to a three-year statute of limitations. RCW 4.16.080(2); *Hill v. Withers*, 55 Wash.2d 462, 464 (1960). By statute, this limitations period can be tolled for negligence claims involving allegations of childhood sexual abuse under certain circumstances:

> All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
>
> (a) Within three years of the act alleged to have caused the injury or condition;
>
> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
>
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought.

RCW 4.16.340(1). Under this statutory scheme, "the limitations period only begins to run on the date of the injury-causing act or the date the victim discovers the nexus between that act and the claimed injury, whichever is later." *Oostra v. Holstine*, 86 Wash. App. 536, 542 (1997).

Plaintiff has alleged that he was abused on various occasions from 1977 until 1982. Pl.'s Compl., ECF No. 1, at ¶ 3.2. Because the most recent allegation of abuse occurred over thirty years ago, Plaintiff's claims are time-barred unless

the statute of limitations has been tolled.  Despite this obvious barrier to relief, the

Complaint contains only two allegations relevant to tolling under RCW 4.16.340:

> Plaintiff has not yet discovered, nor should he reasonably have
> discovered, all of the damages caused by the abuse alleged herein.
> Pl.'s Compl., ECF No. 1, at ¶ 3.28.

> Plaintiff's claims have not expired under the Statute of Limitations
> because not more than three years have elapsed since becoming aware
> of the damages caused by the abuse.  Pl.'s Compl., ECF No. 1, at ¶
> 5.17.

These allegations fail to raise Plaintiff's right to relief above the speculative

level.  Contrary to Plaintiff's assertions, a mechanical recitation of the language of

RCW 4.16.340(1)(b), *without supporting factual content*, is wholly insufficient to

trigger the statute's protections.  The law on this point is now well-settled.  *See*

*Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions[.]") (citations omitted); *Iqbal*, 556 U.S. at 678 ("A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do.'  Nor does a complaint suffice if it tenders 'naked assertions'

devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 557).

Plainly stated, Plaintiff cannot simply copy-and-paste the language of the savings

statute into his Complaint.  While this type of boilerplate recitation arguably

satisfies the more lenient pleading standard embodied in Washington Superior

ORDER GRANTING MOTIONS TO DISMISS ~ 24

1   Court Civil Rule 12(b)(6), *see McCurry v. Chevy Chase Bank, FSB*, 169 Wash.2d

2   96, 101-03 (2010), it is patently deficient under Federal Rule of Civil Procedure

3   12(b)(6).  To avoid dismissal in this Court, Plaintiff must go one step further: he

4   must plead specific, real-world facts which, when accepted as true, would support

5   an inference that he has discovered damages related to the alleged abuse within the

6   past three years.

7        The Court is mindful that RCW 4.16.340 must be construed broadly in favor

8   of victims of childhood sexual abuse.  *See* C.J.C., 138 Wash.2d at 712 (noting that,

9   in enacting RCW 4.16.340, the Washington Legislature "specifically provided for

10  a broad and generous application of the discovery rule to civil action for injuries

11  caused by childhood sexual abuse.").  Nevertheless, Plaintiff has failed to plead a

12  single *fact* from which the Court might construe the statute in his favor.  He has not

13  alleged, for example, that his memory of the alleged abuse had been repressed until

14  a specific date within the past three years; that he had been unable to connect the

15  alleged abuse to a known injury until a specific date within the past three years; or

16  that he did not discover the full scope of the injuries caused by the alleged abuse

17  until a specific date within the past three years.  *See C.J.C.*, 138 Wash.2d at 712-

18  13.  Nor has he taken the next step of stating the circumstances under which any

19  such recent discovery actually occurred.  Unless and until Plaintiff corrects these

20  deficiencies, his Complaint fails to state a viable claim.

1     Because the deficiencies identified above could potentially be cured by

2 pleading additional factual content, leave to amend is appropriate. *Lopez*, 203 F.3d

3 at 1130. Plaintiff's claims against the Yakima Diocese are therefore dismissed

4 with leave to amend within **fourteen (14) days** of the date of this Order.

5    **D. Defendant Yakima Diocese's Remaining Challenges**

6     The Yakima Diocese has raised a number of additional challenges to the

7 legal sufficiency of Plaintiff's claims. Given that Plaintiff's entire complaint is

8 being dismissed with leave to amend, the Court deems it inappropriate to rule on

9 these challenges at this time. In the event that Plaintiff amends his complaint, the

10 Yakima Diocese may renew its additional challenges at that time. At its option,

11 the Yakima Diocese may submit any renewed challenges for consideration on the

12 existing briefing. In responding to any such renewed challenges, Plaintiff may

13 likewise rely on his existing briefing. Alternatively, the parties are welcome to re-

14 brief the relevant issues entirely.

15 **IT IS HEREBY ORDERED:**

16    1.  Defendant Diocese of Beaumont's Motion to Strike the Affidavit of

17       Thomas P. Doyle (ECF No. 19) is **DENIED**.

18    2.  Defendant Diocese of Beaumont's Motion to Dismiss for Lack of

19       Personal Jurisdiction (ECF No. 7) is **GRANTED**. Plaintiff's claims

20       against the Diocese of Beaumont are **DISMISSED** without prejudice.

ORDER GRANTING MOTIONS TO DISMISS ~ 26

The District Court Executive is directed to **TERMINATE** this Defendant (erroneously named as the Roman Catholic Diocese of Beaumont).

3.  Defendant Diocese of Beaumont's Motion to Dismiss for Failure to State a Claim (ECF No. 6) is **DENIED as moot**.

4.  Defendant Corporation of the Catholic Bishop of Yakima's Motion to Dismiss for Failure to State a Claim (ECF No. 2) is **GRANTED**. Plaintiff's claims against this Defendant are **DISMISSED** without prejudice.  Plaintiff is granted leave to file an Amended Complaint within **fourteen (14) days** of the date of this Order.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** September 25, 2013.



THOMAS O. RICE
United States District Judge

ORDER GRANTING MOTIONS TO DISMISS ~ 27